565 A.2d 204

**WESTINGHOUSE ELECTRIC CORPORATION, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (McCLAVE), Respondents.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 14, 1989.

Decided Oct. 18, 1989.

Arthur A. Asti, Jr., Trushel, Klym & Asti, Pittsburgh, for petitioner.

C. Jerome Moschetta, Washington, Sullivan & Sullivan, Lebanon, for Kathleen M. McClave, respondents.

Before CRUMLISH, Jr., President Judge, COLINS, J., and NARICK, Senior Judge.

COLINS, Judge.

Westinghouse Electric Corporation (employer) petitions for review of an order entered December 30, 1988 by the Workmen's Compensation Appeal Board (Board) which reversed the referee's decision and reinstated the payment of benefits as of January 2, 1985.

Kathleen M. McClave (claimant) was employed as an elevator mechanic's helper [1] on December 20, 1983 when she suffered a compensable injury to her right arm, shoulder and neck. Claimant was paid maximum allowable benefits in the amount of $306.00 per week beginning February 13, 1984, pursuant to a Notice of Compensation Payable. On June 5, 1984, employer filed a petition to terminate benefits and a request for supersedeas alleging that claimant had

---

**1.** The job is classified as heavy-duty by the U.S. Department of Labor. The job description indicates that rails which can weigh up to 200 pounds must be manipulated but that this is done with assistance and the use of lifting devices. Tools weighing up to 50 pounds are carried from truck to job site and most heavy carrying is done with material handling equipment. It is additionally indicated that generally female helpers are assigned to larger jobs where there are a variety of lighter tasks to perform. (Referee's finding of fact No. 6.)

fully recovered from her work-related injuries as of March 5, 1984 and that she was able to resume, without limitations, her pre-injury job.

Hearings were held before the referee.[2] Claimant testified that she could not return to her pre-injury job because she did not believe she could perform the tasks of climbing ladders, carrying heavy materials, and unloading trucks.[3]

Via deposition, Albert B. Ferguson, Jr., M.D. testified on behalf of claimant that he first saw claimant on July 20, 1984 and diagnosed her as having tendonitis. Dr. Ferguson saw claimant again on November 12, 1984 and opined that she was incapable of returning to her pre-injury employment, but that she could do light duty work.[4] Richard A. Johnson, M.D. testified on claimant's behalf that he first saw claimant on March 19, 1985 and last saw her on January 20, 1986. Dr. Johnson opined that claimant could only return to light duty work as of May 23, 1985 as she was able to lift no more than fifteen to twenty pounds with her right arm and was to avoid repeated strenuous tasks with that arm.[5]

Jimmy J. Ong, M.D. testified on employer's behalf that he first saw claimant on February 6, 1984 and that claimant had a history of neck, right arm and wrist pain as a result of the injury at work. Dr. Ong testified that his diagnosis of claimant's condition was cervical strain and that, as a result, claimant was disabled from her pre-injury job. He later released claimant to return to her pre-injury job on March 6, 1984.

In addition to the testimony, the referee viewed surveillance films of claimant taken on January 2, January 8, and February 1, 1985 which, among other things, showed claim-

2. Employer had illegally terminated compensation payments to claimant effective March 5, 1984. The referee ordered employer to resume payments beginning March 6, 1984 and continuing thereafter. Attorney's fees and penalties were assessed. (Referee's finding of fact No. 2.)

3. Notes of Testimony, July 27, 1984, at 16.

4. Deposition at pp. 5 and 9–11; Referee's finding of fact No. 8.

5. Deposition at pp. 4, 8 and 12; Referee's finding of fact No. 10.

ant swinging a tennis racket and a baseball bat, catching and throwing a football with her right hand, and carrying various items allegedly weighing between ten and sixty-three pounds.

The referee specifically rejected the testimonies of Drs. Ong and Johnson and accepted as credible the testimony of claimant in part and the testimony of Dr. Ferguson that claimant was partially disabled and could do light duty work as of November 12, 1984. The referee concluded that because employer presented no evidence that any such light duty work was available to claimant, claimant must be presumed by law to remain totally disabled. However, the referee then found as a fact that as of January 2, 1985, as demonstrated by the surveillance films, claimant performed activities which would be approximately the same as those required in her pre-injury job, and concluded that claimant had recovered sufficiently to be able to return to her pre-injury job. The referee further concluded that because there was no specific medical evidence to confirm that claimant had totally recovered from her work-related injuries of December 20, 1983, employer was entitled to a suspension, rather than termination of benefits effective January 2, 1985.

Claimant timely appealed to the Board which reversed the referee and reinstated benefits to claimant as of January 2, 1985. The Board concluded that the referee had committed an error of law in relying solely on the surveillance films, without medical testimony, to support his findings that claimant had sufficiently recovered from her work-related injuries so as to be able to perform her pre-injury job. This appeal followed.

Initially, we note that our review is limited to a determination of whether constitutional rights were violated, an error of law was committed or findings of fact were not supported by substantial evidence. *Sule v. Workmen's Compensation Appeal Board (Kraft, Inc.)*, 121 Pa.Commonwealth Ct. 242, 550 A.2d 847 (1988).

■ Employer argues that the Board committed no error in concluding, based upon the surveillance films, that claimant had recovered sufficiently to perform her pre-injury job. Employer cites *Isadore v. Workmen's Compensation Appeal Board (Owens–Illinois)*, 77 Pa.Commonwealth Ct. 346, 465 A.2d 1096 (1983), in support of its assertion that the surveillance films were properly admitted for the purpose of impeaching claimant's testimony, as well as evidence that claimant was not disabled.

The important distinction between the facts of this matter and those in *Isadore* is that the burden of proof therein was on the claimant to prove an injury in the course of his employment. Here, employer bore the burden of proving that claimant's disability had ceased or had been reduced, that work was available to claimant and that claimant was capable of doing such work. *Zimcosky v. Workmen's Compensation Appeal Board (U.S. Steel Corp.)*, 118 Pa. Commonwealth Ct. 209, 544 A.2d 1106 (1988). Employer ignored this Court's holding in *Isadore* that surveillance films *standing alone* are not adequate to satisfy a party's evidentiary burden. *Sule; Isadore.* While the films could in fact have been used to impeach claimant's credibility, they were insufficient to satisfy employer's burden. Employer here presented no medical evidence as to claimant's ability to perform her pre-injury job as of January 2, 1985. Additionally, the referee specifically rejected the testimony of employer's only medical expert, Dr. Ong. Therefore, it is evident that the referee relied solely on the surveillance films without medical testimony that claimant could perform her pre-injury job or evidence that light duty work was available to claimant. This action constitutes an error of law.[6]

Accordingly, the Board's decision is affirmed.

---

**6.** Employer in its summary of argument alludes to a contention that the referee's findings as to credibility determinations were not supported by substantial competent evidence. We decline to address this argument pursuant to Pa.R.A.P. 2116.

## ORDER

AND NOW, this 18th day of October, 1989, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is affirmed.